UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:26-CV-26827

BRENDA RUBALCABA CASTILLO,

Plaintiff,

vs.

PANELTRONICS INCORPORATED,

Defendant.
______________________________/

# COMPLAINT

Plaintiff, Brenda Rubalcaba Castillo, sues Defendant, Paneltronics Incorporated, as follows:

## *Parties, Jurisdiction, and Venue*

1. **Plaintiff, Brenda Rubalcaba Castillo ("Ms. Rubalcaba"),** was and is a female resident of Miami-Dade County, Florida, who is over 18 years of age, and *sui juris*.

2. **Defendant, Paneltronics Incorporated**, is a *sui juris* for-profit corporation that is authorized to conduct and has conducted its business in Miami-Dade County, Florida, and is subject to this Court's jurisdiction.

3. Defendant was and is responsible for the conduct, acts, and omissions of and by its officers, directors, owners, managers, supervisors, employees, and agents at all times material to this action.

4. This Court has original jurisdiction over Plaintiff's federal question claim under 42 U.S.C. §§ 200gg *et seq*., 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. §2000e(k); 42 U.S.C. § 12101, *et seq*., and 29 U.S.C. §2601, *et seq*., 28 U.S.C. §1331 and pendent/supplemental jurisdiction over

Plaintiff's related Florida state law claims under 28 U.S.C. §1367.

***Common Background Facts***

5. Defendant manufactures, markets, and sells electrical control panels and assemblies used on boats, specialty vehicles, recreational vehicles, motorcoaches, construction equipment, and in military applications.

6. Defendant employed at least 50 employees for at least 20 weeks during each week relevant to the claims brought by Ms. Rubalcaba.

7. Ms. Rubalcaba worked for Defendant as an Account Specialist from November 2022 through April 2025.

8. Ms. Rubalcaba's duties included processing vendor payments, preparing pallets for shipment, entering customer orders into the system, sending invoices to clients, and addressing customer service needs.

9. Ms. Rubalcaba possessed the skills, background, and qualifications necessary to perform the duties of the position(s) she held during her employment.

10. Ms. Rubalcaba consistently met or exceeded performance expectations throughout her employment.

11. Ms. Rubalcaba performed her work for Defendant satisfactorily, and she was in all respects a good employee of Defendant.

12. Ms. Rubalcaba received no complaints or negative feedback about her performance prior to disclosing her pregnancy; on the contrary, her work was consistently evaluated positively.

13. Anif R. Urquijo was an Owner and Office Manager of Respondent.

14. Carlos Jim Jimenez-Rojo served as Defendant's Human Resource Representative and Corporate Controller.

15. Both Ms. Urquijo and Mr. Jimenez-Rojo had supervisory authority over Ms. Rubalcaba's employment with Respondent, and controlled the terms and conditions of that employment, including directing her day-to-day work, scheduling, hiring, firing, disciplining, and otherwise altering the terms and conditions of her employment.

16. At all relevant times, both Ms. Urquijo and Mr. Jimenez-Rojo acted within the scope of their authority on behalf of Defendant, and their actions and omissions are attributable to Defendant.

17. Ms. Urquijo and Mr. Jimenez-Rojo met with Ms. Rubalcaba for an annual performance review on December 11, 2024, during which:

a. Ms. Rubalcaba received a "Very Good" performance rating along with a pay increase, highlighting her strong job performance;

b. Ms. Rubalcaba disclosed that she was pregnant;

c. Ms. Rubalcaba requested to be excused from heavy lifting and frequent bending due to her pregnancy;

d. Ms. Rubalcaba requested three months of maternity leave to start in May 2025as an accommodation for her pregnancy;

e. Ms. Urquijo and Mr. Jimenez-Rojo assured Ms. Rubalcaba that her requested leave would be granted; and

f. Ms. Urquijo and Mr. Jimenez-Rojo told Ms. Rubalcaba that Defendant would hire a temporary replacement to cover her work duties during her maternity leave.

18. Rather than respond with support or understanding, Ms. Urquijo and Mr. Jimenez-Rojo immediately began treating Ms. Rubalcaba adversely after her disclosure and accommodation requests.

19. While pregnant, and despite the pregnancy complications she encountered, Ms. Rubalcaba could continue to satisfactorily perform her essential job duties with or without reasonable accommodations.

20. In January 2025, Mr. Jimenez-Rojo approached Ms. Rubalcaba to revisit the topic of her maternity leave, asked whether she still planned to take three full months off work, and discouraged her from doing so.

21. Around this time, Ms. Urquijo and Mr. Jimenez-Rojo also began blaming Ms. Rubalcaba for errors that were not her fault:

a. They reprimanded her for mistakes made by other employees (including mistakes by Valentina, an employee wo filled in for Ms. Rubalcaba while she was on vacation in August 2024).

b. They began micromanaging her work, subjecting her to increased scrutiny, and criticized her over trivial matters not previously addressed with her.

c. They blamed her for an automatically generated invoice that was sent to a customer, even though the invoice had already been paid, and despite Ms. Rubalcaba having no control over the sending of that invoice

d. They criticized Ms. Rubalcaba for briefly leaving the office to pick up and send mail, even though mailing was part of her regular job responsibilities.

22. This sudden scrutiny and nitpicking of Ms. Rubalcaba's work did not occur with other employees and marked a sharp departure from how Defendant treated her before she announced her pregnancy.

23. Respondent did not subject its other (non-pregnant) employees who did not request maternity leave to this scrutiny, and it marked a sharp departure from how Ms. Rubalcaba had been treated before she disclosed her pregnancy, requested accommodations, and three months of leave related thereto.

24. On February 6, 2025, Ms. Rubalcaba arrived at work as if she were walking into a scene from the movie *Office Space*, only to find the door to her private office had been removed from

its hinges, as depicted below:[1]



25. Ms. Rubalcaba received no prior warning, explanation, or indication that her office door would be removed.

26. Although other employees had private offices with doors, Defendant did not remove any other employee's private office door(s).

27. Defendant's removal of Ms. Rubalcaba's office door stripped her of her privacy, including during her lunch break, and her dignity.

---

1 In the movie *Office Space*, management didn't fire Milton; instead, they made his working conditions so miserable by systematically shrinking his cubicle, taking his stapler, and moving his desk to a dark basement, to coerce him into quitting.

28. Ms. Rubalcaba also noticed that three envelopes she had prepared to mail to customers were missing from her desk when she entered her office that day, February 6, 2025.

29. Later that day, Ms. Rubalcaba learned from another employee:

a. That Raul Urquijo had removed Ms. Rubalcaba's office door at Ms. Urquijo's direction; and

b. That Ms. Urquijo had entered Ms. Rubalcaba's office and taken the three envelopes Ms. Rubalcaba discovered were missing.

30. On February 17, 2025, Ms. Rubalcaba needed to take the day off to attend a doctor's appointment due to pregnancy-related complications (elevated glucose levels).

31. Ms. Rubalcaba submitted a form requesting to take a day of unpaid medical leave to attend this urgent appointment.

32. Rather than granting her request to treat the day as unpaid medical leave, Defendant required Ms. Rubalcaba to use one of her accrued paid time off days for the appointment, thereby requiring her to exhaust an employment-related benefit she had earned to attend this urgent medical appointment to address a pregnancy complication.

33. Defendant's animosity toward Ms. Rubalcaba continued to escalate when, in late February 2025, Ms. Urquijo and Mr. Jimenez-Rojo instructed Ms. Rubalcaba to remove all of her personal belongings from her office, claiming that it would be remodeled.

34. Defendant did not evict any other employee from their private office, nor did any interior office remodeling occur from January through April 22, 2025.

35. In early April 2025, Ms. Rubalcaba arrived at work to find that Respondent had gone a step further and removed her personal belongings and work items from her private office, dumping them onto a desk in the middle of a hallway.

36. Ms. Urquijo and Mr. Jimenez-Rojo told Ms. Rubalcaba that she would no longer

work from an office and would instead work from the desk in the hallway.

37. The makeshift workspace was humiliating and made it difficult for Ms. Rubalcaba to perform her job duties.

38. After Respondent expelled Ms. Rubalcaba from her office, it sat vacant and unused for the remainder of her tenure.

39. Ms. Rubalcaba elected to eat lunch in Respondent's cafeteria, where others ate lunch, since she no longer had a private office within which to eat, which drew criticism of Ms. Rubalcaba from Ms. Urquijo and Mr. Jimenez-Rojo.

40. Meanwhile, Defendant hired a woman as a temporary employee to perform Ms. Rubalcaba's duties during her upcoming maternity leave.

41. During the training period, this woman told Ms. Rubalcaba that Ms. Urquijo repeatedly made derogatory comments about Ms. Rubalcaba related to her pregnancy, how she looked and dressed while pregnant, and that she was being irresponsible for working while pregnant, among other negative commentary.

42. Other employees also told Ms. Rubalcaba that Ms. Urquijo and Mr. Jimenez-Rojo were speaking negatively to other employees about Ms. Rubalcaba and her pregnancy.

43. The woman hired to work while Ms. Rubalcaba was on leave quit after only one week because of derogatory comments made by Defendant's managerial personnel about Ms. Rubalcaba, her pregnancy, how she looked and dressed while pregnant, and the difficult atmosphere created by the terrible treatment of Ms. Rubalcaba.

44. Ms. Rubalcaba suffered a spike in her blood pressure (preeclampsia), a complication of her pregnancy, on April 4, 2025, necessitating that she leave work and be evaluated at the hospital on an urgent basis.

45. Ms. Rubalcaba's doctor thereafter instructed her to attend weekly prenatal appointments every Monday to closely monitor her health and her pregnancy after this complication.

46. Ms. Rubalcaba promptly informed Ms. Urquijo and Mr. Jimenez-Rojo of her need to attend these weekly appointments on Mondays.

47. Ms. Rubalcaba requested that Respondent accommodate her by allowing her to work half-days on Mondays so she could leave by 1:30 p.m. to attend her weekly doctor's appointments.

48. Rather than accommodate her by allowing her to work half-days on Mondays, Defendant:

a. instructed Ms. Rubalcaba not to work at all on Mondays and told that her pay would be reduced accordingly;

b. required Ms. Rubalcaba to provide her doctor's availability for appointments and to provide it to management so that Ms. Urquijo and Mr. Jimenez could decide which days they would allow her to schedule medical appointments for her pregnancy and pregnancy-related complication(s); and

c. required Ms. Rubalcaba her to personally report to Ms. Urquijo and Mr. Jimenez every time she needed to take a break to use the restroom or eat lunch.

49. Defendant's non-pregnant employees were not treated the same or similarly to Ms. Rubalcaba:

a. they were given flexibility in their work hours (for example, other employees were allowed to start work early, leave early, or work beyond regular office hours as needed for personal appointments without such scrutiny);

b. they were allowed to schedule medical appointments without providing their doctors' availability; and

c. they were not required to personally report to Ms. Urquijo and Mr. Jimenez every time they needed to take a break to use the restroom or eat lunch.

50. When Ms. Rubalcaba requested that the directive for her to report to Ms. Urquijo

and Mr. Jimenez before using the restroom or taking a lunch break be put in writing, Defendant refused.

51. Then, after Defendant previously approved her request to take leave for her pregnancy leave in writing, Mr. Jimenez-Rojo told Ms. Rubalcaba:

a. that she would not be permitted to take three months of maternity leave

b. that Defendant would not preserve her position upon her return from maternity leave; and

c. that she would be required to apply for a position with Defendant upon her return from maternity leave, with no promise of reinstatement or reemployment.

52. Defendant's hostility toward Ms. Rubalcaba continued to escalate, and on April 22, 2025, Mr. Jimenez-Rojo yelled at Ms. Rubalcaba in the middle of the hallway, in front of her coworkers, to embarrass her about her work, without any reasonable justification for yelling at a pregnant woman.

53. Because of the adverse treatment she received from Defendant, including its frequency, severity, and continued escalation, Ms. Rubalcaba's workplace became intolerable.

54. Defendant left Ms. Rubalcaba with no other option but to resign to protect her health and that of her unborn child, constructively discharging her and leaving her a pregnant woman who lost the sole source of income and benefits for herself and her child shortly before she was to take a leave of absence.

55. All conditions precedent to bringing this action have been satisfied or otherwise waived, including Ms. Rubalcaba's submission of a Charge of Discrimination to the EEOC on December 4, 2025, and the EEOC's issuance of a Determination and Notice of Rights on July 22, 2026.

56. Ms. Rubalcaba retained the undersigned counsel and agreed to pay a reasonable

fee for the services rendered in connection with this matter.

57. Ms. Rubalcaba is entitled to recover her attorney's fees and costs from Defendant upon prevailing in this action.

**COUNT I**
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT**

58. Ms. Rubalcaba pursues claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") to address Defendant's violations of Title VII and the damages she suffered as a result.

59. The Pregnancy Discrimination Act of 1978 (the "PDA") amended Title VII to clarify that Title VII's prohibition against sex discrimination includes a prohibition "because of" or "on the basis of" pregnancy, childbirth, or related medical conditions.

60. Defendant was, at all times material, an "employer" as defined in 42 U.S.C. § 2000e and subject to the provisions of Title VII.

61. Ms. Rubalcaba was, at all times material, employed by Defendant and an "employee" of Defendant as defined in 42 U.S.C. § 2000e and a pregnant female entitled to the protections afforded by Title VII.

62. Ms. Rubalcaba suffered and will continue to suffer damages as a direct and proximate result of Defendant's violations of Title VII, including:

a. economic damages, including lost past and future wages and benefits; loss of seniority rights; and out-of-pocket expenses for job searches, retraining, and/or other money paid due to Defendant's conduct in violation of Title VII, and other care and treatment resulting from Defendant's conduct;

b. noneconomic damages, including emotional distress, mental anguish, humiliation, loss of dignity, reputational harm, and other intangible damages; and

c. other compensatory damages as allowed by law.

63. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Rubalcaba's rights under Title VII, warranting the imposition of punitive damages.

**COUNT I$_A$ – TITLE VII PREGNANCY DISCRIMINATION (DISPARATE TREATMENT)**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges all preceding paragraphs as though set forth fully herein and further alleges as follows:

64. Defendant treated Ms. Rubalcaba differently (worse) than its non-pregnant employees by subjecting her to the adverse employment actions and materially adverse changes in the terms, conditions, and privileges of her employment, as set forth above, because of her pregnancy.

65. Ms. Rubalcaba's pregnancy, pregnancy-related absences, and her requested leave of absence were substantial or motivating factors in why the Defendant treated her differently (worse) than its non-pregnant employees.

66. Defendant did not subject its employees who did not disclose their pregnancy, were not pregnant women, did not take time off from work due to their pregnancy, and/or did not request a pregnancy leave of absence to the same or similar conduct, adverse employment actions, or to materially adverse changes in the terms, conditions, and privileges of employment as Ms. Rubalcaba.

67. The acts of pregnancy discrimination complained of herein were not on account of any bona fide seniority, merit, or incentive system, or any factor other than Ms. Rubalcaba's pregnancy.

68. Defendant's differential treatment of Ms. Rubalcaba, as set forth above, constitutes unlawful discrimination in violation of Title VII.

**COUNT I$_B$ –TITLE VII PREGNANCY DISCRIMINATION**
**(HOSTILE WORK ENVIRONMENT)**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 63 as though set forth fully herein and further alleges as follows:

69. Defendant subjected Ms. Rubalcaba to persistent remarks about her pregnancy and the clothing she wore because of her pregnancy; commentary to discourage her from taking a maternity leave of absence; increased scrutiny at work regarding her medical appointments and her taking bathroom and lunch breaks; demeaning treatment, including removal of her office door, displacement from working in an office to a desk in a hallway, and yelling and publicly demeaning her; disparaging comments about her to other employees; and the other conduct as set forth above, because of her pregnancy.

70. Defendant did not subject its employees who did not disclose their pregnancy, were not pregnant women, did not take time off from work due to their pregnancy, and/or did not request a pregnancy leave of absence to the same or similar remarks, scrutiny, demeaning treatment, or other conduct directed at Ms. Rubalcaba.

71. Ms. Rubalcaba's pregnancy was a substantial or motivating factor in why the Defendant treated her with such hostility at work.

72. The acts of pregnancy discrimination complained of herein were not on account of any bona fide seniority, merit, or incentive system, or any factor other than Ms. Rubalcaba's pregnancy.

73. Defendant's creating, subjecting, or permitting the hostile work environment that was utterly intolerable for Ms. Rubalcaba because of her pregnancy constitutes unlawful retaliation in violation of Title VII.

## COUNT $I_C$ – TITLE VII RETALIATION

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 63 as set forth fully herein and further alleges as follows:

74. Title VII prohibits an employer from retaliating against an employee because she engaged in protected activity, including requesting and taking pregnancy-related leave of absence.

75. Ms. Rubalcaba engaged in protected activity by informing Defendant of her pregnancy, requesting pregnancy-related accommodations, requesting a maternity leave of absence, and seeking time away from work for pregnancy-related medical needs.

76. After Ms. Rubalcaba engaged in protected activity, Defendant subjected Ms. Rubalcaba to adverse employment actions and materially adverse changes in the terms, conditions, and privileges of her employment, as set forth above, because she engaged in the protected activity described above.

77. Ms. Rubalcaba's engaging in the protected activity identified above was a substantial or motivating factor in Defendant's retaliatory conduct against her.

78. Defendant did not subject its employees who did not disclose a pregnancy or request pregnancy-related complication(s) to the same or similar adverse employment actions and materially adverse changes in the terms, conditions, and privileges of employment as Ms. Rubalcaba.

79. Defendant's retaliatory conduct would have dissuaded a reasonable employee from engaging in protected activity.

80. Defendant's retaliatory conduct toward Ms. Rubalcaba because she engaged in protected conduct constitutes unlawful retaliation in violation of Title VII.

**COUNT I**
**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Brenda Rubalcaba Castillo, demands the entry of a judgment in her favor and against Defendant, Paneltronics Incorporated, declaring that Defendant violated Title VII; requiring that she be reinstated to the position she would have held, with all attendant lost wages, benefits, and seniority rights; awarding her compensatory damages, including for the loss of past and future wages, benefits, and seniority rights, and for mental anguish, loss of dignity, reputational damages, and other intangible injuries; awarding her punitive damages against Defendant; granting her a permanent injunction precluding Defendant from engaging in retaliatory employment practices identified herein; and awarding her all interest allowed by law, her attorney's fees and costs, and such other and further relief as the Court deems just and proper.

**COUNT II**
**VIOLATIONS OF THE PREGNANT WORKERS FAIRNESS ACT**

81. The Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. §§2000GG, *et seq.*, requires covered employers to provide reasonable accommodations to a qualified employee's known limitations related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions.

82. Defendant was, at all times material, an "employer" as defined in 42 U.S.C. § 2000gg and subject to the provisions of the PWFA.

83. Ms. Rubalcaba was, at all times material, employed by Defendant and a "qualified employee" of Defendant as defined in 42 U.S.C. § 2000gg as a pregnant female was entitled to the protections afforded by the PWFA.

84. Ms. Rubalcaba had one or more "known limitation(s)" in her physical or mental condition related to, affected by, or arising out of her pregnancy and related medical appointments that she communicated to the Defendant as set forth above.

85. Ms. Rubalcaba disclosed her pregnancy and communicated her pregnancy-related limitations and need for accommodations to Defendant.

86. None of the accommodations requested by Ms. Rubalcaba would pose an undue hardship on the Defendant's operation as a business entity.

87. Defendant did not engage in any interactive process regarding each of the reasonable accommodations requested by Ms. Rubalcaba.

88. Ms. Rubalcaba suffered and will continue to suffer damages as a direct and proximate result of Defendant's violations of the PWFA, including:

a. economic damages, including lost past and future wages and benefits; loss of seniority rights; and out-of-pocket expenses for job searches, retraining, and/or other money paid due to Defendant's conduct in violation of the PWFA, and other care and treatment resulting from Defendant's conduct;

b. noneconomic damages, including emotional distress, mental anguish, humiliation, loss of dignity, reputational harm, and other intangible damages; and

c. other compensatory damages as allowed by law.

89. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Rubalcaba's rights under the PWFA, warranting the imposition of punitive damages.

**COUNT $II_A$ – PWFA DISCRIMINATION**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 57 and 81 through 89 as though set forth fully herein and further alleges as follows:

90. The PWFA makes it unlawful for an employer to fail to reasonably accommodate

known limitations related to pregnancy, childbirth, or related medical conditions unless an employer can demonstrate that the accommodation would pose an undue hardship on the operation of the business.

91. Ms. Rubalcaba engaged in protected activity by informing Defendant of her pregnancy, requesting pregnancy-related accommodations, requesting a maternity leave of absence, and seeking time away from work for pregnancy-related medical needs.

92. After Ms. Rubalcaba engaged in protected activity, Defendant subjected Ms. Rubalcaba to adverse employment actions and materially adverse changes in the terms, conditions, and privileges of her employment, as set forth above, because she engaged in the protected activity described above.

93. Defendant also denied Ms. Rubalcaba's requests for reasonable accommodations to the limitations related to her pregnancy and related medical conditions.

94. Defendant did not subject its non-pregnant employees to the same adverse employment actions and materially adverse changes in the terms, conditions, and privileges of employment as Ms. Rubalcaba.

95. Defendant further violated the PWFA by interfering with Ms. Rubalcaba's pregnancy-related needs, discouraging her from taking maternity leave, requiring her to take a full day off to attend medical appointments when she could have taken a half-day off, subjecting her to adverse treatment after she requested pregnancy-related accommodations and leave, and subjecting her to the conduct described above.

96. Ms. Rubalcaba's pregnancy was a substantial or motivating factor in why the Defendant discriminated against her.

97. The acts of pregnancy discrimination complained of herein were not on account of any bona fide seniority, merit, or incentive system, or any factor other than Ms. Rubalcaba's pregnancy.

98. Defendant's hostile and differential treatment of Ms. Rubalcaba because of her pregnancy constitutes unlawful discrimination against her in violation of the PWFA.

**COUNT II$_B$ – PWFA RETALIATION**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 57 and 81 through 89 as though set forth fully herein and further alleges as follows:

99. The PWFA prohibits an employer from retaliating against an employee because she engaged in protected activity, including disclosing her pregnancy and related medical conditions and requesting reasonable accommodations related thereto.

100. Ms. Rubalcaba engaged in protected activity by informing Defendant of her pregnancy and related medical conditions and requesting accommodations for the limitations resulting from her pregnancy and related medical conditions.

101. Defendant, however, denied Ms. Rubalcaba's requests for reasonable accommodations to the limitations related to her pregnancy and related medical conditions.

102. Plus, Defendant subjected Ms. Rubalcaba to adverse employment actions and materially adverse changes in the terms, conditions, and privileges of her employment, as set forth above, because she disclosed her pregnancy and related medical conditions and requested reasonable accommodations.

103. Ms. Rubalcaba's protected activity was a substantial or motivating factor in Defendant's retaliatory conduct against her.

104. Defendant's retaliatory conduct would have dissuaded a reasonable employee from disclosing their pregnancy and related medical conditions to and requesting reasonable accommodations from Defendant.

105. Defendant's retaliatory conduct toward Ms. Rubalcaba because she engaged in protected conduct constitutes unlawful retaliation in violation of the PWFA.

**COUNT II**
**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Brenda Rubalcaba Castillo, demands the entry of a judgment in her favor and against Defendant, Paneltronics Incorporated, declaring that Defendant violated the PWFA; requiring that she be reinstated to the position she would have held, with all attendant lost wages, benefits, and seniority rights; awarding her compensatory damages, including for the loss of past and future wages, benefits, and seniority rights, and for mental anguish, loss of dignity, reputational damages, and other intangible injuries; awarding her punitive damages against Defendant; granting her a permanent injunction precluding Defendant from engaging in retaliatory employment practices identified herein; and awarding her all interest allowed by law, her attorney's fees and costs, and such other and further relief as the Court deems just and proper.

**COUNT III**
**VIOLATIONS OF TITLE I OF THE ADA**

106. The Americans with Disabilities Act of 1990, *see* 42 U.S.C. §12101, *et seq.*, as well as the 2009 amendments thereto ("ADA"), prohibits employers from discriminating against qualified individuals because of an actual or perceived disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112.

107. Ms. Rubalcaba was, at all times material, an "employee" as the term is defined by 42 U.S.C. §12111(4).

108. Ms. Rubalcaba was, at all times material, a "qualified individual" as defined by the ADA who could perform the essential functions of her job with or without reasonable accommodation. 42 U.S.C. §12111(8).

109. Defendant was an "employer" as defined by the ADA. 42 U.S.C. §12111(8)

110. Defendant was also a "covered entity" as defined by 42 U.S.C. §12111(2) subject to complying with the ADA.

111. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; … or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

112. Title I of the ADA prohibits discrimination by an employer against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

113. By virtue of her pregnancy complication(s), Ms. Rubalcaba suffered from a "disability" as a physical or mental impairment that substantially limited her major life activities, including caring for herself, performing manual tasks, lifting, bending, and such major bodily functions as her bladder, circulatory, and reproductive functions. 26 U.S.C. § 12101.

114. Defendant knew of Ms. Rubalcaba's disability as a result of her pregnancy complications.

115. Defendant also "regarded" Ms. Rubalcaba as disabled because it modified her work duties and schedule due to her pregnancy and pregnancy-related complication(s).

116. Ms. Rubalcaba suffered and will continue to suffer damages as a direct and proximate result of Defendant's violations of the ADA, including:

a. economic damages, including lost past and future wages and benefits; loss of seniority rights; and out-of-pocket expenses for job searches, retraining, and/or other money paid due to Defendant's conduct in violation of the ADA, and other care and treatment resulting from Defendant's conduct;

b. noneconomic damages, including emotional distress, mental anguish, humiliation, loss of dignity, reputational harm, and other intangible damages; and

c. other compensatory damages as allowed by law.

117. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Rubalcaba's rights under the ADA, warranting the imposition of punitive damages.

**COUNT III$_A$ – ADA DISCRIMINATION**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 57 and 106 through 117 as though set forth fully herein and further alleges as follows:

118. The ADA makes it unlawful for an employer to fail to reasonably accommodate known limitations of an employee who is disabled or regarded as disabled unless the employer can demonstrate that the accommodation would pose an undue hardship.

119. Defendant, nonetheless, denied Ms. Rubalcaba's requests for reasonable accommodations to the limitations related to her pregnancy complication(s).

120. Defendant also took adverse actions against Ms. Rubalcaba on account of her requesting and using reasonable accommodations related to her pregnancy complication(s) and/or by regarding her as disabled by subjecting her to adverse employment actions and materially adverse changes in the terms, conditions, and privileges of her employment, as set forth above.

121. Defendant did not subject its employees who were not disabled or regarded as disabled to the same adverse employment actions and materially adverse changes in the terms, conditions, and privileges of employment as Ms. Rubalcaba.

122. Defendant treated Ms. Rubalcaba differently than its employees who were not disabled or regarded as disabled because she suffered from a disability or it regarded her as suffering from a disability.

123. Defendant further violated the ADA by discouraging Ms. Rubalcaba from attending medical appointments by requiring her to take a full day off when she could have taken a half-day off (as requested), subjecting her to adverse treatment after she requested reasonable accommodations, and subjecting her to the conduct described above.

124. Ms. Rubalcaba's disability and/or being regarded as disabled were substantial or motivating factors in why the Defendant treated her with hostility and differently than its non-pregnant employees.

125. Defendant's hostile and differential treatment of Ms. Rubalcaba because of her pregnancy constitutes unlawful discrimination against her in violation of the ADA.

126. The acts of disability discrimination complained of herein were not on account of any bona fide seniority, merit, or incentive system, or any factor other than Ms. Rubalcaba's disability, request(s) for reasonable accommodation(s), or Defendant's regarding her to be disabled.

**COUNT III$_B$ – ADA RETALIATION**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 57 and 106 through 117 as set forth fully herein and further alleges as follows:

127. The ADA prohibits an employer from retaliating against an employee because she engaged in protected activity, including disclosing her disability (pregnancy complications) and requesting reasonable accommodations related thereto.

128. Ms. Rubalcaba engaged in protected activity by informing Defendant of her pregnancy complications and requesting accommodations related thereto.

129. Plus, Defendant subjected Ms. Rubalcaba to adverse employment actions and materially adverse changes in the terms, conditions, and privileges of her employment, as set forth above, because she disclosed her disability (pregnancy complications) and requested reasonable accommodations.

130. Ms. Rubalcaba's protected activity was a substantial or motivating factor in Defendant's retaliatory conduct against her.

131. Defendant's retaliatory conduct would have dissuaded a reasonable employee from disclosing their disability and requesting reasonable accommodations from Defendant.

132. Defendant's retaliatory conduct toward Ms. Rubalcaba because she engaged in protected conduct constitutes unlawful retaliation in violation of the ADA.

WHEREFORE, Plaintiff, Brenda Rubalcaba Castillo, demands the entry of a judgment in her favor and against Defendant, Paneltronics Incorporated, declaring that Defendant violated the ADA; requiring that she be reinstated to the position she would have held, with all attendant lost wages, benefits, and seniority rights; awarding her compensatory damages, including for the loss of past and future wages, benefits, and seniority rights, and for mental anguish, loss of dignity, reputational damages, and other intangible injuries; awarding her punitive damages against Defendant; granting her a permanent injunction precluding Defendant from engaging in retaliatory employment practices identified herein; and awarding her all interest allowed by law, her attorney's fees and costs, and such other and further relief as the Court deems just and proper.

**COUNT IV**
**FAMILY AND MEDICAL LEAVE ACT VIOLATIONS**

133. The Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.*, entitles eligible employees to take up to 12 weeks of leave, intermittently or consecutively, in a calendar year in which that employee worked more than 1,250 hours.

134. Ms. Rubalcaba worked more than 1,250 hours in each relevant 12-month period, making her eligible for leave under the FMLA.

135. Despite advising Defendant on December 11, 2024, that she would start FMLA maternity leave on May 2, 2025, and then requesting the FMLA forms from Defendant in January 2025, Defendant did not provide Ms. Rubalcaba written notice of her rights under the FMLA until March 2025.

136. Defendant initially claimed that Ms. Rubalcaba had not submitted her completed FMLA form in March 2025.

137. Mr. Jimenez-Rojo eventually provided Ms. Rubalcaba a Notice of Eligibility & Rights and Responsibilities Under the Family and Medical Leave Act (Form WH-381), indicating that she was eligible for FMLA leave to commence May 27, 2025, a delay without justification.

138. Ms. Rubalcaba promptly advised Mr. Jimenez-Rojo that the FMLA form he provided identified the wrong start date for her FMLA leave (May 27, 2025 instead of May 2, 2025) and requested updated/corrected paperwork.

139. Defendant then requested that Ms. Rubalcaba provide not only a physician certification of her eligibility for leave (on Form WH-381) but also a signed authorization to allow it to request from her treating physician(s) each functional limitation that could constitute a disability, each activity of daily living affected, the accommodations to be made, and the duration

for which the accommodations were to be made, as a condition of receiving approval for FMLA leave.

140. Defendant ultimately provided Ms. Rubalcaba a corrected Notice of Eligibility & Rights and Responsibilities Under the Family and Medical Leave Act (Form WH-381) identifying her leave date to commence on May 2, 2025, but indicated she was ineligible because Defendant did not have at least 50 employees within 75 miles of Ms. Rubalcaba's worksite as of the date of her request on April 9, 2025.

141. If Defendant did not employ at least 50 employees within 75 miles of Ms. Rubalcaba's worksite as of the date of her request for FMLA leave, Defendant's written representations to Ms. Rubalcaba that she was eligible operate to estop it from claiming that she was not protected by the FMLA under the doctrine of detrimental reliance and/or estoppel.

142. Had Defendant notified Ms. Rubalcaba that it did not qualify under the FMLA or that she was not FMLA-eligible before April 9, 2025, she would have either continued working during her remaining pregnancy, made alternate arrangements to either return to work earlier and/or utilize her PTO and vacation time differently in advance of the birth of her child, so as to protect her employment and return to work after the birth of her child without issue.

**COUNT IV$_A$ – FMLA FAILURE TO NOTIFY**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 57 and 133 through 137 as set forth fully herein and further alleges as follows:

143. The FMLA, at 29 C.F.R. §825.300(b), requires that "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days."

144. Despite Ms. Rubalcaba disclosing her pregnancy as a qualifying FMLA event on December 11, 2024, her intention to take 12 weeks of maternity leave, and the requirements set forth in 29 C.F.R. §825.300, Defendant failed to promptly:

a. provide her notice that the leave she requested would qualify as protected leave under the FMLA;

b. notify her of her right to take FMLA leave;

c. provide her with any paperwork concerning her FMLA rights, or

d. notify Ms. Rubalcaba that she could take extended or intermittent FMLA leave.

145. Instead, Defendant attempted to prevent her from learning about her rights under the FMLA and delayed informing her of those rights. *But see* 29 U.S.C. §2615.

146. As a direct and proximate result of Defendant's failure to promptly notify Ms. Rubalcaba of her FMLA rights, Ms. Rubalcaba suffered damages recoverable under the FMLA, including lost wages, salary, employment benefits, and other compensation denied or lost to her by reason of Defendant's violation(s).

147. Defendant lacked a good-faith, reasonable belief that its conduct complied with the FMLA, entitling Ms. Rubalcaba to recover liquidated damages equal to the compensatory damages awarded to her.

**COUNT IV$_B$ – FMLA INTERFERENCE**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 57 and 133 through 142 as set forth fully herein and further alleges as follows:

148. After Ms. Rubalcaba disclosed her pregnancy and her intention to take 12 weeks of maternity leave, Defendant subjected her to hostile and materially adverse treatment, as detailed above.

149. Defendant further violated the FMLA by interfering with Ms. Rubalcaba's rights

by claiming she did not submit a completed FMLA form in March 2025, discouraging her from taking a consecutive leave of absence for maternity leave, delaying taking action on her FMLA request, contending it did not have the requisite number of employees when Ms. Rubalcaba requested FMLA leave, by preventing her from taking brief, intermittent leaves of absence by requiring her to take a full day off to attend medical appointments when she could have taken a half-day off, subjecting her to adverse treatment after she requested leave and submitted her FMLA paperwork, and subjecting her to the conduct described above.

150. Defendant's hostility towards and adverse treatment of Ms. Rubalcaba was due to her disclosing her pregnancy, taking intermittent leave, and anticipated exercise of extended consecutive leave, and was intended to frustrate, delay, dissuade, and prevent her use of and/or taking leave.

151. Defendant did not subject its other employees who did not disclose a qualifying condition and take or request to take an intermittent or consecutive leave of absence afforded by the FMLA to the same or similar hostility, comments, conduct, adverse employment actions, or materially adverse changes in the terms, conditions, and privileges of employment as Ms. Rubalcaba.

152. Ms. Rubalcaba's disclosure of her pregnancy, intermittent leave, and intention to take a 12-week consecutive leave of absence were substantial or motivating factors in why the Defendant treated her with hostility and differently than its non-pregnant employees.

153. Defendant's hostile and differential treatment of Ms. Rubalcaba because of her pregnancy constitutes unlawful interference against her in violation of the FMLA.

154. Defendant lacked a good-faith, reasonable belief that its conduct complied with the FMLA, entitling Ms. Rubalcaba to recover liquidated damages equal to the compensatory damages awarded to her.

**COUNT IV$_C$ – FMLA RETALIATION**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 57 and 133 through 142 as set forth fully herein and further alleges as follows:

155. The FMLA makes it unlawful for an employer to retaliate against an employee who requests a protected leave of absence.

156. As described above, Defendant made Ms. Rubalcaba's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign, resulting in her constructive discharge.

157. Ms. Rubalcaba engaged in protected activity by informing Defendant of her pregnancy and leave related thereto.

158. Plus, Defendant subjected Ms. Rubalcaba to adverse employment actions and materially adverse changes in the terms, conditions, and privileges of her employment, as set forth above, because she disclosed her pregnancy complication(s) and requested reasonable accommodations.

159. Ms. Rubalcaba's protected activity was a substantial or motivating factor in Defendant's retaliatory conduct against her.

160. Defendant's retaliatory conduct would have dissuaded a reasonable employee from disclosing their pregnancy and requesting leave from Defendant.

161. Defendant's retaliatory conduct toward Ms. Rubalcaba because she engaged in protected conduct constitutes unlawful retaliation in violation of the FMLA.

162. As a direct and proximate result of Defendant's retaliation against Ms. Rubalcaba in violation of her FMLA rights, Ms. Rubalcaba suffered damages recoverable under the FMLA, including lost wages, salary, employment benefits, and other compensation denied or lost to her by reason of Defendant's violation(s).

163. Defendant lacked a good-faith, reasonable belief that its conduct complied with the FMLA, entitling Ms. Rubalcaba to recover liquidated damages equal to the compensatory damages awarded to her.

**COUNT IV**
**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Brenda Rubalcaba Castillo, demands the entry of a judgment in her favor and against Defendant, Paneltronics Incorporated, finding that it violated the FMLA, requiring that she be reinstated to the position she would have held, with all attendant lost wages, benefits, and seniority rights; awarding her compensatory damages, including for the loss of past and future wages, benefits, and seniority rights; awarding her liquidated damages equal to the compensatory damages awarded to her; and awarding her all interest allowed by law, her attorney's fees and costs, and such other and further relief as the Court deems just and proper.

**COUNT V**
**FLORIDA CIVIL RIGHTS ACT VIOLATIONS**

164. The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that person's "race, color, religion, sex, pregnancy, national origin, age, disability, or marital status."

165. Ms. Rubalcaba was, at all times material, a "person," as defined in Fla. Stat. §760.02(6).

166. Ms. Rubalcaba was, at all times material, an "individual" entitled to the protections afforded by the FCRA in Fla. Stat. §760.10.

167. Ms. Rubalcaba was at all times a member of one or more classes protected from employment discrimination under the FCRA, including based on her sex (woman), pregnancy, and handicap (complicated pregnancy).

168. Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the FCRA by employing more than 15 people for each working day in each of 20 or more calendar weeks in each relevant calendar year. Fla. Stat. §760.02(6).

169. In Fla. Stat. §760.10, the FCRA prohibits employers, including Defendant, from making employment decisions or taking personnel actions that affect the terms, conditions, and/or privileges of employment based on sex, pregnancy, or disability.

170. Ms. Rubalcaba suffered and will continue to suffer damages as a direct and proximate result of Defendant's violations of the FCRA, including:

a. economic damages, including lost past and future wages and benefits; loss of seniority rights; and out-of-pocket expenses for job searches, retraining, and/or other money paid due to Defendant's conduct in violation of the FCRA, and other care and treatment resulting from Defendant's conduct;

b. noneconomic damages, including emotional distress, mental anguish, humiliation, loss of dignity, reputational harm, and other intangible damages; and

c. other compensatory damages as allowed by law.

171. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Rubalcaba's rights under the FCRA, warranting the imposition of punitive damages.

**COUNT V$_A$ – DISCRIMINATION IN VIOLATION OF THE FCRA**
**(DISPARATE TREATMENT)**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 57 and 164 through 171 as set forth fully herein and further alleges as follows:

172. Defendant subjected Ms. Rubalcaba to adverse employment actions and materially adverse changes in the terms, conditions, and privileges of her employment because of her sex, pregnancy, and disability (pregnancy complications) and her requests for reasonable accommodations.

173. Defendant treated Ms. Rubalcaba less favorably than its similarly situated employees who did not disclose their pregnancy, were not pregnant women, did not suffer from a disability (pregnancy complications), did not take time off from work due to their pregnancy or pregnancy complications, and/or did not request a pregnancy leave of absence, with respect to the same or similar conduct, adverse employment actions, or materially adverse changes in the terms, conditions, and privileges of employment as Ms. Rubalcaba.

174. Ms. Rubalcaba's pregnancy and/or disability (pregnancy complications) was a substantial or motivating factor in why Defendant treated her differently (worse) than its employees who were not pregnant women and/or who did not suffer from a disability (pregnancy complication).

175. The acts of discrimination complained of herein were not on account of any bona fide seniority, merit, or incentive system, or any factor other than Ms. Rubalcaba's pregnancy.

176. Defendant's conduct constitutes unlawful discrimination in violation of the FCRA.

**COUNT V$_B$ – DISCRIMINATION IN VIOLATION OF THE FCRA**
**(HOSTILE WORK ENVIRONMENT)**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 57 and 164 through 171 as set forth fully herein and further alleges as follows:

177. Defendant subjected Ms. Rubalcaba to persistent remarks about her pregnancy and the clothing she wore because of her pregnancy; commentary to discourage her from taking a maternity leave of absence; increased scrutiny at work regarding her medical appointments and her taking bathroom and lunch breaks; demeaning treatment, including removal of her office door, displacement from working in an office to a desk in a hallway, and yelling and publicly demeaning her; disparaging comments about her to other employees; and the other conduct as set forth above, because of her pregnancy and disability (pregnancy complications).

178. Defendant did not subject its employees who did not disclose their pregnancy or disability (pregnancy complications), were not pregnant women, did not take time off from work due to their pregnancy or disability (pregnancy complications), did not request accommodations, and/or did not request maternity leave to the same or similar remarks, scrutiny, demeaning treatment, or other conduct directed at Ms. Rubalcaba.

179. Ms. Rubalcaba's pregnancy and/or disability (pregnancy complications) were substantial or motivating factors in why the Defendant treated her with such hostility at work.

180. The acts of pregnancy and/or disability discrimination complained of herein were not on account of any bona fide seniority, merit, or incentive system, or any factor other than Ms. Rubalcaba's pregnancy.

181. Defendant's creating, subjecting, or permitting the hostile work environment that was utterly intolerable for Ms. Rubalcaba because of her pregnancy and/or disability (pregnancy complications) constitutes unlawful retaliation in violation of the FCRA.

**COUNT V$_C$ – FCRA RETALIATION**

Plaintiff, Brenda Rubalcaba Castillo, reincorporates and re-alleges paragraphs 1 through 57 and 164 through 171 as set forth fully herein and further alleges as follows

182. The FCRA prohibits an employer such as the Defendant from retaliating against an employee because the employee opposed an unlawful employment practice or otherwise engaged in activity protected by the FCRA.

183. Ms. Rubalcaba engaged in protected activity when she informed Defendant of her pregnancy, requested pregnancy-related accommodations, informed Defendant of her disability (pregnancy complications), requested related accommodations, and requested maternity leave.

184. After Ms. Rubalcaba engaged in protected activity, Defendant subjected her to retaliatory adverse actions, including heightened scrutiny, criticism, removal of her office door, removal of her belongings, loss of her office, assignment to a hallway desk, disparaging comments about her pregnancy, forced use of paid time off for an urgent pregnancy-related medical appointment, and conduct that caused her constructive discharge.

185. Defendant's retaliatory conduct would have dissuaded a reasonable employee from engaging in protected activity.

186. Ms. Rubalcaba's engaging in the protected activity identified above was a substantial or motivating factor in Defendant's retaliatory conduct against her.

187. Defendant's conduct constitutes unlawful retaliation in violation of the FCRA.

**COUNT V**
**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Brenda Rubalcaba Castillo, demands the entry of a judgment in her favor and against Defendant, Paneltronics Incorporated, declaring that Defendant violated the FCRA; requiring that she be reinstated to the position she would have held, with all attendant lost wages, benefits, and seniority rights; awarding her compensatory damages, including for the loss of past and future wages, benefits, and seniority rights, and for mental anguish, loss of dignity,

reputational damages, and other intangible injuries; awarding her punitive damages against Defendant; granting her a permanent injunction precluding Defendant from engaging in retaliatory employment practices identified herein; and awarding her all interest allowed by law, her attorney's fees and costs, and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Brenda Rubalcaba Castillo, demands a trial by jury of all issues so triable.

Dated this 29th day of September 2026.

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
Katelyn Schickman, Esq.
Fla. Bar No. 1064879
katie@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel: 305.230.4884
*Counsel for Plaintiff*